[No. B071852. Second Dist., Div. Six. Jan. 12, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
WARREN DOUGLAS DICKEY, Defendant and Appellant.

**COUNSEL**

J. Barry Schiavo, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

YEGAN, J.—Warren Douglas Dickey was convicted by plea of possessing cocaine. (Health & Saf. Code, § 11350, subd. (b).) Proceedings were suspended and probation was granted upon certain terms and conditions, inter alia, the service of 68 days in county jail. Prior thereto, he unsuccessfully brought a motion pursuant to Penal Code section 1538.5. He appeals meritoriously contending that ". . . appellant's pat down and search were not justified under the circumstances described by Deputy Conway."

At approximately 3:40 p.m. on June 28, 1992, Deputy Sheriff Kenneth Conway of the San Luis Obispo County Sheriff's Department (the deputy) was on routine patrol with his partner. He was driving his black and white patrol vehicle on a one-lane dirt road extension of Illinois Avenue in rural Nipomo. He saw a 1977 El Camino which was stopped in the roadway with its engine running. The driver appeared to make ". . . furtive movements, moving around in the driver's seat."

The deputy approached the driver, appellant herein, and asked him what he was doing parked in the middle of the road. Appellant replied that he was just admiring the view of the valley and sand dunes below.

When asked for identification, appellant truthfully identified himself as Warren Dickey but could not produce written identification or a driver's license. Neither could the passenger. Both were ordered to alight from the El Camino and did so. The deputy ascertained via the police radio that the car was registered to appellant. Appellant, however, was unable to produce the registration certificate for the vehicle. He said that the registration papers might be in a backpack located in the car but the backpack was not his.

The deputy twice requested permission to search the car. Appellant twice refused. The deputy admitted that he was "angry" with appellant and told appellant so. He testified that appellant ". . . was just wasting time or trying to put things off." He told appellant he would just look for items in plain view in the car to justify the search. He was unable to find anything in plain

view. Appellant and the passenger denied ownership of the backpack but appellant gave the deputy permission to search it.

The deputy retrieved the backpack, opened it, and saw a toothbrush and a film canister. The film canister contained powder which he believed to be baking soda, a cutting agent for narcotics. Appellant said that he used the powder to brush his teeth. The deputy testified that after he found the "cut," he wanted to search the car.[1]

The deputy asked appellant and the passenger to accompany him to the rear of the vehicle. Appellant was nervous and sweating despite the fact that it was a cool day. The deputy conducted a patdown search of appellant for weapons. He testified that even though appellant was not "aggressive" he ". . . potentially may have been armed." He explained his rationale for the "pat-down" as follows: "At that time I was conducting a further investigation and so I patted him down for my safety and if I found something like contraband or something, I could possibly search the vehicle and I wasn't going to turn my back on two guys even with a partner."

The deputy felt no hard objects but did feel a soft object. He testified: "The consistency and feel of the bulge led me to believe that it might be a controlled substance." He amplified his testimony as follows: "I felt the bulge, and it felt not round, but elongated and it had a texture or just a good feeling to it, and I just squeezed from the outside of it and felt it was a plastic—felt like plastic or felt like a plastic baggie with something in it."

The deputy reached into appellant's pocket and retrieved a baggie containing less than one-half ounce of marijuana and a baggie containing 3.19 grams of cocaine. The cocaine formed the evidentiary basis for the Health and Safety Code section 11350, subdivision (b) charge.

In *Terry* v. *Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868], the United States Supreme Court held that a police officer who lacks probable cause to arrest could undertake a patdown search only ". . . where he has reason to believe that he is dealing with an armed and

---

[1]It is readily apparent, however, that the deputy wanted to search the car long before he found the "cut." He was twice previously refused permission to search the car. In addition, he attempted to find justification for the search of the El Camino by the "plain view" doctrine. It also appears that one of the reasons for the "pat down" was the deputy's desire to search the car. (See, *post*, this page.)

Just why the deputy was so adamant in his quest to "go fishing" in the El Camino is not shown in the record. The notion that he was prompted by "general curiosity" thus violating the letter and spirit of the Fourth Amendment comes to mind. (See, e.g., *Barber* v. *Superior Court* (1973) 30 Cal.App.3d 326, 330 [106 Cal.Rptr. 304]; *People* v. *Williams* (1971) 20 Cal.App.3d 590, 592 [97 Cal.Rptr. 815].)

dangerous individual . . . ." "The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Id.*, at p. 29 [20 L.Ed.2d at p. 911].) The officer must be able to point to specific and articulable facts together with rational inferences therefrom which reasonably support a suspicion that the suspect is armed and dangerous. (*Id.*, at p. 20 [20 L.Ed.2d at p. 905]; see also *Sibron* v. *New York* (1968) 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889]; *Cunha* v. *Superior Court* (1970) 2 Cal.3d 352, 356 [85 Cal.Rptr. 160, 466 P.2d 704]; *People* v. *Collins* (1970) 1 Cal.3d 658, 663 [83 Cal.Rptr. 179, 463 P.2d 403].) Where, as here, there are no such specific and articulable facts presented, the patdown search cannot be upheld.

 The deputy testified that he performed the patdown search for "officer safety" and because appellant "potentially may have been armed." Without "specific and articulable" facts which show that the suspect may be armed and dangerous, these conclusions add nothing. In every encounter with a citizen by the police, the citizen may potentially be armed.

The patdown search could not be justified based on the fact that appellant (1) had no identification, (2) exercised his Fourth Amendment right and refused to allow the deputy to search the vehicle, (3) was nervous and sweating, (4) or because baking powder was found in a film canister. None of these considerations, considered singly or in combination, would lead an officer to " '. . . reasonably believe in the possibility that a weapon may be used against him . . . .' " (*People* v. *Lawler* (1973) 9 Cal.3d 156, 161 [107 Cal.Rptr. 13, 507 P.2d 621] quoting *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 204 [101 Cal.Rptr. 837, 496 P.2d 1205].)

In denying the suppression motion, the magistrate ruled that ". . . once he [the deputy] found the baking soda or powder, which under the circumstances as I have found, I think the officer was well within his rights to pat down Mr. Dickey." We do not follow this logic. Possession of a small amount of baking soda or powder should not lead an officer to believe that appellant was armed and dangerous. (*Santos* v. *Superior Court* (1984) 154 Cal.App.3d 1178, 1185 [202 Cal.Rptr. 6].) The film canister contained baking powder, not gun powder.[2]

The magistrate's reliance upon *People* v. *Lee* (1987) 194 Cal.App.3d 975 [240 Cal.Rptr. 32] was also misplaced. There the officer ". . . believed

---

[2]As to the "furtive gesture" (see *ante*, p. 954), we question the "moving around in the driver's seat" as the equivalent of a "furtive gesture." Just how this activity is invested with a "guilty meaning" is not explained in the record. (*People* v. *McGaughran* (1979) 25 Cal.3d 577, 590 [159 Cal.Rptr. 191, 601 P.2d 207].) Indeed, this is so weak that neither the prosecutor below nor the Attorney General on appeal even offered it as a justification for the patdown.

defendant was reaching for a weapon . . . ." (*Id.*, at p. 980.) Here, no evidence was presented that the deputy believed appellant was reaching for or had a weapon.

"[E]ven if the pat-down before us was justified at its inception, the search became impermissible in its scope when . . . [the deputy] reached into defendant's pocket." (*People* v. *Collins* (1970) 1 Cal.3d 658, 664 [83 Cal.Rptr. 179, 463 P.2d 403].) "Feeling a soft object in a suspect's pocket during a pat-down, absent unusual circumstances, does not warrant an officer's intrusion into a suspect's pocket to retrieve the object." (*Id.*, at p. 662.) The United States Supreme Court has recently held that a soft object may not be retrieved by a police officer performing a patdown search unless its incriminating character is "immediately apparent." (*Minnesota* v. *Dickerson* (1993) 508 U.S. __ [124 L.Ed.2d 334, 345, 113 S.Ct. 2130].) Just as in *Minnesota* v. *Dickerson*, here the deputy manipulated the soft object before retrieving it. In his words, ". . . I just squeezed from the outside." Its incriminating character was not "immediately apparent." On this record, the retrieval of the soft object was unlawful.

Were we to uphold the instant patdown and the seizure of subject contraband, we would, in essence, eviscerate the authorities here cited as well as the rule requiring the People to justify, on the record, a warrantless search. (E.g., *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations. (*People* v. *Koelzer* (1963) 222 Cal.App.2d 20, 27 [34 Cal.Rptr. 718]; *People* v. *Cove* (1964) 228 Cal.App.2d 466, 470, fn. 1 [39 Cal.Rptr. 535].) However, the *Terry* rule has been extant for over a quarter of a century and is well known to the police. (*Terry* v. *Ohio*, *supra*, 392 U.S. 1 [20 L.Ed.2d 889].) It is alive and well. (*Minnesota* v. *Dickerson*, *supra*, 508 U.S. __ [124 L.Ed.2d 334, 344, 113 S.Ct. 2130].) The suppression motion was erroneously denied.

The judgment is reversed with directions to dismiss.

Stone (S. J.), P. J., and Gilbert, J., concurred.