Filed 3/3/14  P. v. Wedlow CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ISIAH WEDLOW,<br><br>    Defendant and Appellant. | B247510<br><br>(Los Angeles County<br>Super. Ct. No. SA078246) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark E. Windham and Katherine Mader, Judges.  Affirmed.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Nima Razfar, Deputy Attorneys General for Plaintiff and Respondent.

————————————————

Following the denial of a motion to suppress evidence, Isiah Wedlow pleaded no contest to carrying a loaded and unregistered handgun (Pen. Code, § 12031, subd. (a)(1)), a felony, and having a concealed firearm on his person (Pen. Code, § 12025, subd. (a)(2)), a misdemeanor.[1] On appeal Wedlow concedes he was lawfully detained but contends the semiautomatic handgun discovered in his waistband during a pat search should have been suppressed because the deputy sheriff who had detained him did not reasonably believe he was armed and dangerous. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Wedlow's motion to suppress was heard in conjunction with the preliminary hearing. The evidence at the hearing established on June 2, 2011 Los Angeles County Deputy Sheriff Ramon Munoz and his partner were on routine patrol near a middle school at approximately 3:15 p.m. as school was letting out. Wedlow was walking along the curb, and Deputy Munoz saw him put a piece of chewing gum in his mouth and toss the wrapper on the ground. Deputy Munoz got out of his patrol car and called Wedlow over to him. Wedlow backed away quickly and looked left and right as if he wanted to run away. Although it was a warm day, Wedlow was wearing a black hooded sweatshirt; and his hands were inside the front pouch-pocket. Deputy Munoz asked Wedlow to remove his hands; Wedlow complied. Deputy Munoz testified he had intended only to talk to Wedlow about littering but, "because of his demeanor and he was wearing a heavy sweater in summer—on June 2, it was a warm day—I patted him down for weapons." The deputy felt a hard object in Wedlow's waistband and discovered a .380 caliber semiautomatic firearm.

---

[1]     Pursuant to the plea agreement, the trial court suspended imposition of sentence and placed Wedlow on summary probation for two years on condition he complete 25 days of service with the California Department of Transportation. Under the terms of the agreement, if Wedlow successfully completed probation, his conviction for carrying a loaded and unregistered handgun would be dismissed. However, if he violated probation, he could be sentenced to a three-year state prison term. Wedlow thereafter violated probation, and a year after the original sentencing hearing the trial court sentenced him to an aggregate state prison term of two years.

At the conclusion of the hearing defense counsel argued there was no reasonable suspicion to justify the pat search for officer safety under *Terry v. Ohio* (1968) 392 U.S. 1 [88 S. Ct. 1868, 20 L.Ed.2d 889] (*Terry*) and asserted the firearm should be suppressed. The court, acting in the limited role of magistrate, denied the suppression motion without addressing the *Terry* issue, concluding, because Deputy Munoz had probable cause to arrest Wedlow for littering, the search was valid as a search incident to arrest. Wedlow was held to answer.

Wedlow renewed his suppression motion in superior court under Penal Code section 1538.5, subdivision (i). The People asserted the pat search was appropriate under *Terry* based on Deputy Munoz's reasonable belief Wedlow was armed and dangerous and was also valid as a search incident to arrest. The court denied the motion on both bases, concluding as to the *Terry* pat search, "The fact that the defendant did not react like a normal person would react if a police officer said, 'I'm stopping you, stop,' but instead backed away, hesitated, moved away, kept his hands in his pockets, wasn't wearing the right clothing for the weather, officer is by himself, for those reasons alone, I think that he had a right to conduct a pat down."[2] Wedlow then entered his no contest plea pursuant to the negotiated agreement.

### DISCUSSION

1. *Standard of Review*

In reviewing the ruling on a motion to suppress, the appellate court defers to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Ayala* (2000) 23 Cal.4th 225, 255; *People v. James* (1977) 19 Cal.3d 99, 107.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court. (*James*, at p. 107.) However, in determining whether, on the facts found,

---

[2]     Because we conclude Deputy Munoz's pat search was lawful under *Terry*, we need not reach the court's alternative conclusion the semiautomatic handgun was discovered during a valid search incident to arrest.

the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.)[3]

2. *The Law Governing Pat Searches*

When a police officer reasonably suspects a crime has been committed and the individual he has detained may be armed and dangerous, the officer may "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (*Terry*, *supra*, 392 U.S. at p. 31.) "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." (*Adams v. Williams* (1972) 407 U.S. 143, 146 [92 S.Ct. 1921, 32 L.Ed.2d 612].) To justify a pat search for weapons, the officer need not have probable cause to arrest the individual nor "be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry*, at p. 27.) The officer's reasonable suspicion must be directed at the individual to be searched (*Ybarra v. Illinois* (1979) 444 U.S. 85, 95 [100 S.Ct. 338, 62 L.Ed.2d 238]) and must be based on specific, articulable facts. (*Terry,* at p. 21; see *In re H.M.* (2008) 167 Cal.App.4th 136, 143 ["a limited frisk for weapons is justified where the officer 'can point to specific and articulable facts which, considered in conjunction with rational inferences to be drawn therefrom, give rise to a reasonable suspicion that the suspect is armed and dangerous'"].)

The determination whether an officer had reasonable suspicion to conduct a pat search for weapons is based on the totality of the circumstances. (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1074.) Reasonable suspicion must be based on "commonsense

---

[3]     Whether relevant evidence obtained by assertedly unlawful means must be excluded is determined exclusively by deciding whether its suppression is mandated by the federal Constitution. (Cal. Const., art. I, § 28, subd. (f)(2); *People v. Lenart* (2004) 32 Cal.4th 1107, 1118.)

judgments and inferences about human behavior." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 125 [120 S.Ct. 673, 145 L.Ed.2d 570].)

        3. *The Trial Court Properly Denied Wedlow's Suppression Motion*

Wedlow does not dispute that Deputy Munoz properly detained him after seeing him litter on public property, an infraction committed in the deputy's presence. Nonetheless, Wedlow asserts the pat search violated the Fourth Amendment because it was not supported by a reasonable suspicion Wedlow was armed and dangerous.

This is a close case, but we conclude there were specific and articulable facts sufficient to support Deputy Munoz's decision to conduct a pat search for officer safety: (1) Wedlow was wearing an incongruously heavy sweatshirt in warm weather. (2) Wedlow's hands were concealed in the front pouch-pocket of the sweatshirt. (3) When directed by Deputy Munoz to approach him, Wedlow seemed nervous, hesitated, looked around and backed away, appearing to Deputy Munoz as if he wanted to flee. (4) Wedlow, an adult, was detained near a middle school at a time when the students were on the street, heading for home. The superior court's factual finding that Wedlow behaved abnormally when commanded by Deputy Munoz to approach him and its implied finding the heavy sweatshirt worn by Wedlow could conceal a weapon— whether a gun or a knife—were fully supported by the record.[4]

To be sure, as our dissenting colleague points out, Wedlow did not in fact flee; and he responded to Deputy Munoz's order to show his hands. But Wedlow's decision to cooperate when confronted by Deputy Munoz does not negate the reasonableness of the deputy's initial, commonsense judgment, based on his experience and training (see *Terry, supra*, 392 U.S. at p. 27), that Wedlow could be armed and thus dangerous. (See *In re H.M., supra*, 167 Cal.App.4th at p. 144 ["[n]ervous, evasive behavior is a pertinent

---

[4]     Although Deputy Munoz did not use the term "baggy" or "bulky" to describe the sweatshirt worn by Wedlow on a warm June day, given his specific identification of the garment as one of the reasons he decided to conduct a pat search, there can be no doubt he thought it could conceal a weapon.

factor in determining a reasonable suspicion" detained suspect was armed, citing *Illinois v. Wardlow, supra*, 528 U.S. at p. 124]; *People v. Collier* (2008) 166 Cal.App.4th 1374, 1377-1378 & fn. 1 [the wearing of baggy clothing, coupled with other suspicious circumstances, can furnish the requisite facts to support a pat search for weapons]; *People v. Lopez* (2004) 119 Cal.App.4th 132, 137 [loose or baggy clothing capable of concealing a weapon properly considered as one factor supporting decision to conduct a pat search]; cf. *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1241 [heavy coat considered as one factor justifying limited search for weapons].)

Nothing in *Ybarra v. Illinois, supra*, 444 U.S. 85 compels the contrary conclusion. At the time of that decision, an Illinois statute authorized law enforcement officers executing a search warrant to also search all individuals at the location identified in the warrant to protect the officers from attack and prevent the disposal or concealment of evidence. In *Ybarra* police officers had a warrant authorizing the search of a tavern and a specific bartender for evidence of possession of heroin. Once inside the tavern, pursuant to the Illinois statute, one of the officers conducted a "cursory search for weapons" of the nine to 13 customers present, including Ybarra. Six packets of heroin were discovered in Ybarra's pants pocket, and he was arrested and charged with unlawful possession of a controlled substance. Ybarra's motion to suppress the evidence was denied, and he was convicted. The Supreme Court reversed his conviction, holding the search of Ybarra violated the Fourth Amendment: The police had no reason to believe Ybarra "had committed, was committing or was about to commit any offense under state or federal law." In addition, he "made no gestures indicative of criminal conduct, made no movements that might suggest an attempt to conceal contraband, and said nothing of a suspicious nature to the police officers." (*Id.* at p. 91.) Thus, there was no probable cause to search Ybarra. (*Ibid.*)

In addition, the Supreme Court held the pat search of Ybarra was not supported by a reasonable belief he was armed and dangerous under *Terry*: "Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that

6

was not threatening.  At the suppression hearing, the most Agent Johnson could point to was that Ybarra was wearing a 3/4-length lumber jacket, clothing which the State admits could be expected on almost any tavern patron in Illinois in early March." (*Ybarra v. Illinois, supra*, 444 U.S at p. 93.)

Here, in marked contrast, Wedlow's choice of clothing—a heavy sweatshirt on a warm June day—was unusual; his hands were concealed; he appeared nervous in the presence of the deputy; and his initial physical movements suggested an intention to flee. In sum, based on the totality of the circumstances, Deputy Munoz reasonably believed his safety was at risk; and the decision to pat search Wedlow was justified.  (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957 ["The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety.  The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations."].)  Wedlow's suppression motion was properly denied.

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.

I concur:


WOODS, J.

7

ZELON, J., Dissenting:

I respectfully dissent.

In *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] (*Terry*), the United States Supreme Court held a patsearch is justified only when the officer reasonably believes, based on the totality of the circumstances, the particular person he or she is questioning or detaining is armed and dangerous to the officer or to others. In doing so, the Court explicitly recognized that a patsearch "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." (*Id.* at p. 17.) It is with that admonition in mind that I conclude the facts in this difficult case cannot support the search.

Deputy Munoz testified he conducted the patsearch for officer safety because Wedlow seemed to want to run away, appeared nervous, and was wearing a heavy sweatshirt in warm weather. There was additional evidence Wedlow's hands were initially concealed in his front pouch-pocket, and he was detained near a middle school, at a time when the students were leaving for home. However, none of these facts, considered singly or in combination, would lead an officer to "'reasonably believe in the possibility that a weapon may be used against him'" or others nearby. (*People v. Dickey* (1994) 21 Cal.App.4th 952, 956.) Wedlow did not flee, and he responded promptly to Munoz's request to show his hands. Indeed, there was no evidence Wedlow was being uncooperative, let alone threatening. (Compare *People v. Mendoza* (2011) 52 Cal.4th 1056, 1082 [patsearch of three individuals justified in part by one individual's hostile reaction towards single officer during consensual encounter]; *In re H.M.* (2008) 167 Cal.App.4th 136, 144 [patsearch justified in part by suspect's threatening movements and failure to obey officer's commands].) Furthermore, nothing in Munoz's description of the sweatshirt suggested it was baggy or capable of concealing a weapon. (Compare *People v. Mendoza, supra,* 52 Cal.4th at p. 1082 [patsearch justified in part by individual's baggy clothing, which could hide a weapon]; *People v. Collier* (2008) 166 Cal.App.4th 1374, 1377-1378.) While the setting of the search was relevant, Munoz did

not testify that any middle school students were in close proximity or likely to be harmed by a weapon in Wedlow's possession. In any event, the time and location of the encounter "are insufficient by themselves to cast reasonable suspicion on an individual." (*People v. Medina* (2003) 110 Cal.App.4th 171, 177 [patsearch of driver following traffic stop not justified when based solely on driver's presence in high crime area late at night].)

Particularly instructive here is *Ybarra v. Illinois* (1979) 444 U.S. 85, in which the police entered a bar with a search warrant to search the bartender for narcotics. In executing the warrant, the officers conducted a weapon search of everyone in the bar. An officer pat-searched the defendant and discovered six packets of heroin in his pants pocket. (*Id.* at p. 89.) The officer maintained the protective search was justified because the defendant was wearing a three-quarter length lumber jacket. (*Id*. at p. 93.) In rejecting this justification, the United States Supreme Court observed this type of clothing might be expected on almost any bar patron in Illinois in early March. (*Ibid*.) The Court observed the defendant's hands were empty, he gave no indication he possessed a weapon, made no gestures or other actions suggesting an intent to commit an assault, and did not act in a threatening manner. (*Ibid*.) The Court concluded the police failed to articulate any specific facts justifying a patsearch of the defendant, noting "[n]othing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons." (*Id.* at pp. 93-94.)

As in *Ybarra*, the defendant here displayed his empty hands, was cooperative, and did not threaten the officer. Although he was wearing a sweatshirt on a warm day, the record does not demonstrate that it could conceal a weapon.

The facts of this case also stand in contrast to those in the other cases relied on by the majority. In *People v. Collier, supra,* 166 Cal.App.4th at 1378, the court pointed out two circumstances of significance which caused it to uphold the validity of the search. First, the stop was for drugs and "guns often accompany drugs." In addition, the officers had probable cause to search the car and intended to do so, leading the court to conclude that the officer need not continue his investigation without a search in light of the defendant's size, his baggy clothing, and the knowledge that he may have been using drugs. (*Ibid*.) None of the factors relied on by the *Collier* court were identified in this case.

In *People v. Lopez* (2004) 119 Cal.App.4th 132, officers responded to a call about a man who had threatened another with a gun. Defendant, who was belligerent and refused to cooperate, was wearing baggy clothing and had a large heavy object visible in his front pocket. Defendant reached toward the front of his pants several times during the encounter, prior to the search. Again, none of the factors relied on by the court can be found in this record.

Finally, in *In re Frank V.* (1991) 233 Cal.App.3d 1232, officers observed Frank V., and another man, leaving the curb of a known gang house at night in a gang neighborhood. When they stopped the men, Frank V. was wearing a heavy coat, with his hands in his pockets; after being instructed to take his hands out, he attempted to reach into his pockets again. That action, in addition to the location and the other observations of the officers, was held to provide an "additional factor" to justify the search. (*Id*. at p. 1241.) Again, no such factors can be found in this search of an individual who dropped a gum wrapper in the middle of the day.

In concluding the patsearch of Wedlow exceeded constitutional boundaries, I am mindful, as is the majority, that "[t]he judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations. [Citations.]" (*People v. Dickey, supra,* 21 Cal.App.4th at p. 957; see *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 110 [54 L. Ed. 2d 331, 336, 98 S.Ct. 330].)

3

However, where, as here, the totality of circumstances yields no specific, articulable facts that would reasonably lead to a conclusion that the safety of the officer or safety of others was at risk, the patsearch should not be upheld.

ZELON, J.

4