Filed 7/29/14  P. v. Spears CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C074820 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF13745) |
| v. | |
| ALVIN LOUIS SPEARS, | |
| Defendant and Appellant. | |

After pleading no contest to possession for sale of methamphetamine and being a felon in possession of a firearm and admitting three prior drug convictions, defendant Alvin Louis Spears was sentenced to state prison.  Defendant appeals the trial court's order denying his motion to suppress evidence (Pen. Code,[1] § 1538.5), contending that the patdown search performed was unlawful.  We affirm.

---

[1]      Undesignated section references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

After the preliminary examination, defendant filed a section 1538.5 motion seeking to suppress all observations by the police during their warrantless search, all statements allegedly made by defendant during the search, and all physical evidence taken from defendant.[2]

At the hearing on the motion, the People presented the testimony of the arresting officers, Yolo County Sheriff's Deputies Donald Harmon and Almir Dugonjic. Defendant did not present evidence.

Deputy Harmon testified as follows:

Around 8:30 a.m. on February 21, 2013, while he and Deputy Dugonjic were on patrol in Dunnigan, they saw a car turn onto County Road 88B, do a U-turn and come back in the same direction, then stop in the middle of the intersection of County Roads 88B, 88C, and 4, partially blocking the intersection. The officers stopped their patrol car about 15 feet behind the car, but did not turn on their emergency lights or siren.

While the officers were still in their patrol car, defendant got out of the car from the passenger side. As they walked toward the car, defendant approached them and they began to speak to him. Then Deputy Harmon told Deputy Dugonjic to talk to the driver, who was still in the car.

Defendant seemed "nervous, confused." He was holding a cell phone and claimed to be lost. His eyes were red and bloodshot.

Defendant was wearing baggy jeans, which in Deputy Harmon's experience could conceal weapons. The jeans were cinched at the waist. Deputy Harmon could not recall what defendant was wearing above the waist.

---

[2]     Defense counsel later clarified that the motion challenged only the search of defendant's person, not the subsequent search of the car in which defendant was a passenger.

2

Defendant smelled strongly of marijuana. When Deputy Harmon asked him if he had been smoking marijuana, he denied it at first, but finally admitted it.

About one minute after Deputy Harmon began talking to defendant, he patted him down, for "officer safety reasons mostly."[3] Specifically, defendant "smelled like marijuana, was lying about it, seemed to be confused about where he was and where he was going." Neither the "smell of marijuana alone," nor defendant's confusion "alone," caused Deputy Harmon to think defendant might have had a weapon. However, those facts, defendant's baggy clothing, and his initial lying all played a part in Deputy Harmon's thinking on this point.

Deputy Harmon located what felt like "a large baggie of some kind of substance," which he did not think was a weapon, in defendant's right-side front pocket. Looking down into the pockets of defendant's jeans, Deputy Harmon saw that the object was a baggie that looked like marijuana. As he continued the patdown, Deputy Harmon felt what he believed to be a "crank pipe."

Deputy Dugonjic testified that when the officers got out of their patrol car, defendant approached him and claimed to be lost. Deputy Dugonjic could smell marijuana on him. Defendant was wearing baggy clothes, including a bulky hooded sweatshirt, and he seemed nervous. Because of his baggy clothing, the odor of marijuana on him, and his nervous behavior, Deputy Dugonjic felt defendant needed to be patted down for weapons.[4]

---

[3] Deputy Harmon did not patdown defendant earlier because he was also concerned about the driver, who had not yet been contacted.

[4] When Deputy Dugonjic contacted the driver, he observed that she also had red bloodshot eyes, and he smelled alcohol and marijuana emanating from her person. After learning that she had a suspended driver's license and a misdemeanor warrant, Deputy Dugonjic removed her from the car, searched it, and found a loaded handgun in the passenger door compartment.

Defense counsel argued that neither baggy clothing nor the smell of marijuana on a person gave rise to a reasonable suspicion that the person might be carrying weapons.

The trial court asked whether it was "an unusual circumstance" that defendant got out of the car in the middle of the intersection and approached the officers instead of waiting for them to approach the car. Defense counsel said: "I couldn't answer that." The court asked whether the officers might have felt concern about that conduct. Counsel replied that she had asked specifically what caused them concern and neither of them mentioned the fact that defendant approached them; therefore, it could not be considered even as part of the "totality of the circumstances."

The prosecutor cited *People v. Collier* (2008) 166 Cal.App.4th 1374 as a case with very similar facts where the trial court and the appellate court found reasonable suspicion to justify a patdown search.

The trial court ruled:

"Okay. The Court has heard testimony from the officer[s] that the car that they were observing took certain actions, stopped in an intersection, they pulled up behind it. What the Court finds somewhat unique is the car, where it stopped, but also the fact that the defendant here got out of the car and approached the officers, who got out of their vehicle and encountered him then either on the passenger side or the front of the vehicle. Both officers noted that the defendant smelled [of] marijuana. The second officer [who] testified today indicated that the defendant was wearing a sweatshirt and bagg[y] pants. The first officer indicated that the pants were bagg[y], though cinched at the waist, but certainly bagg[y].

"Officer Harmon indicated that he was told in answer to the question the defendant said that he had not been smoking marijuana, and then admitted later that he had been smoking marijuana. This was at 8:30 in the morning. The observations were made by both officers that the defendant was nervous, seemed confused. And all of those elements, including the fact of the bulging pants, would, in the Court's view, totality of

4

the circumstances here, lead a reasonable person to -- and motivated by officer safety, to at least conduct a pat down search just to be sure the person who had approached him wasn't in a position to cause the officer any harm.

"I do find that based on that view of the totality of the circumstances that were out there at the time that the officer was justified in the brief pat-down search. The fact that he saw the marijuana in one of the pockets that he was patting down doesn't lead to the conclusion that he should have been then leaning down and looking in the pockets to see if there was a weapon. We don't ask the officers to have to do that much. They're entitled to do a pat down and to do it quickly, which in this case resulted in the finding of marijuana on his person.

"I do find . . . with regard to the pat down that there was a basis for that search."

DISCUSSION

Defendant contends the totality of the circumstances did not give rise to a reasonable suspicion that he was armed and dangerous. We disagree.

On review of a ruling denying a motion to suppress evidence, we view the facts most favorably to the respondent and uphold the trial court's factual findings if supported by substantial evidence. (*People v. Woods* (1999) 21 Cal.4th 668, 673; *People v. Watkins* (2009) 170 Cal.App.4th 1403, 1408.) However, we decide independently whether the search or seizure was reasonable under the Fourteenth Amendment. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)

"In *Terry v. Ohio* (1968) 293 U.S. 1, 27 [20 L.Ed.2d 889, 909 . . .], the United States Supreme Court held that a police officer who lacks probable cause to arrest could undertake a patdown search only '. . . where he has reason to believe that he is dealing with an armed and dangerous individual . . . .' 'The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' (*Id.* at p. 29 [20 L.Ed.2d at p. 911].)

5

The officer must be able to point to specific and articulable facts together with rational inferences therefrom which reasonably support a suspicion that the suspect is armed and dangerous." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 955-956.)

"The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations." (*People v. Dickey*, *supra*, 21 Cal.App.4th at p. 957.)

Here, the trial court found that the totality of the circumstances gave the officers a reasonable suspicion defendant was armed and dangerous because he acted in an unusual manner by approaching the officers rather than waiting for them to approach the stopped car in which he was a passenger; he seemed nervous and confused; he smelled of marijuana but initially denied smoking it; and he was wearing baggy clothing that could easily conceal a weapon. These facts are very similar to those of *Collier,* where the appellate court found a patdown search was reasonable.

In *Collier*, the defendant was a passenger in a car stopped for a Vehicle Code violation. The officers smelled marijuana emanating from both the driver's side and the passenger side of the car. Defendant was asked to step out of the car. Asked if he had weapons or anything illegal on his person, he said no. He was taller than the officer who spoke to him and was wearing baggy clothing. The officer, fearing for his safety, patted defendant down for weapons. (*People v. Collier*, *supra*, 166 Cal.App.4th at pp. 1376-1377.) This search was reasonable because: (1) the defendant's presence in a car emanating the smell of marijuana "furnished a rational suspicion that he may have been in the possession and transportation of drugs" (*id.* at p. 1377); (2) " 'guns often accompany drugs' " (*id.* at p. 1378); and (3) the defendant's size and baggy clothing gave additional grounds for concern about officer safety (*ibid*.).

Here, the officers smelled marijuana on defendant, who had just been in a car; thus, as in *Collier*, it was reasonable to suspect that where there were drugs being

6

possessed and transported, there might also be guns.  And, as in *Collier*, defendant was wearing baggy clothing that could conceal a weapon.  Although the car in this case did not involve a traffic stop as in *Collier*, its illegal position blocking an intersection would have justified a traffic stop.  (Veh. Code, § 22500, subd. (a).)

Defendant asserts that none of the facts we have mentioned, standing alone, could justify a patdown search.  But the officers did not testify, and the trial court did not find, that any of those facts *alone* justified the search.

Defendant relies on *Dickey*, where the appellate court invalidated a patdown search, but his reliance is misplaced.  There, officers found the defendant's car stopped on a rural roadway with its engine running.  He appeared to make furtive movements in the driver's seat.  He told the officers he had parked to admire the view.  He truthfully identified himself, but could not produce written identification or a driver's license.  Although the officers ascertained that the car was registered to the defendant, he could not produce the registration certificate; he said it might be in a backpack in the car, but the backpack was not his.  He twice refused permission to search the car, but gave an officer permission to search the backpack.  Doing so, the officer saw a toothbrush and a film canister which appeared to contain baking soda, a substance that can be a cutting agent for narcotics.  He asked defendant and defendant's passenger to accompany him to the back of the car.  Although it was a cool day, defendant was nervous and sweating.  The officer performed a patdown search, purportedly out of concern for his safety, and found a baggie containing illegal substances.  (*People v. Dickey*, *supra*, 21 Cal.App.4th at pp. 954-955.)

The appellate court found that the officer had not stated any "specific and articulable" facts to show that the defendant might be armed and dangerous.  (*People v. Dickey*, *supra*, 21 Cal.App.4th at p. 956.)  Neither the defendant's lack of identification, nor his exercise of his Fourth Amendment right to refuse the search of his car, nor his nervousness and sweating, nor the fact that baking powder was found in a film canister,

7

"considered singly or in combination," would lead an officer to believe reasonably that a weapon might be used against him.  (*Ibid*.)

However, in *People v. Collier*, *supra*, 166 Cal.App.4th at page 1374 -- a decision authored by the same justice who authored *Dickey* -- the court distinguished *Dickey* because in that case, unlike in *Collier*, there was no traffic stop and no indication the driver was smoking or transporting drugs. (*Collier*, at p. 1378.)  Here, as in *Collier*, the situation would have justified a traffic stop and the defendant had clearly been smoking and possibly transporting an illegal drug.

Despite the prosecutor's reliance on *Collier* in the trial court, defendant fails to discuss it in his opening brief.  In his reply brief, he attempts to distinguish it and also questions its reasoning, but these arguments come too late.  We do not consider arguments raised first in a reply brief without good cause. (*Sourcecorp, Inc.* v. *Shill* (2012) 206 Cal.App.4th 1054, 1061-1062, fn. 7.)

Under the totality of the circumstances, there were sufficient specific and articulable facts to create reasonable suspicion that defendant was armed and dangerous.

## DISPOSITION

The order denying defendant's motion to suppress evidence is affirmed.


        ROBIE        , J.


We concur:


    BLEASE     , Acting P. J.


    DUARTE    , J.