Mihara, J., dissenting
I respectfully dissent. My colleagues conclude that a police officer may justify a pat search without identifying any specific, *87 articulable fact suggesting that the citizen is armed. I believe we are bound by established Fourth Amendment precedent, which requires that a pat search be justified by a reasonable suspicion that the citizen is armed. Because the officer in this case did not identify any fact suggesting that defendant Irvin Sacrite was armed, the pat search was unjustified. Consequently, I would reverse the probation order and direct the court to grant defendant's suppression motion.
I. Background
Defendant moved to suppress the evidence on the ground that the pat search was unjustified. San Jose Police Officer John Prim was the only witness at the suppression hearing. He testified that, at 4:00 p.m. on April 16, 2014, he was the passenger in an unmarked police vehicle being driven by his partner in downtown San Jose. Prim noticed defendant riding a bicycle northbound in the southbound flow of traffic. Defendant was carrying a red Budweiser can in his left hand. The can was open, and Prim saw defendant drink from the can twice. Prim concluded that defendant's operation of his bicycle violated Vehicle Code section 21650.1 [bicycles must go in same direction on the roadway as vehicles] and that his consumption of alcohol violated San Jose Municipal Code section 10.12.010 [no consumption of alcohol on public streets].[1]
Prim and his partner followed defendant for about a block and then pulled their vehicle in front of his bicycle. Prim got out of the vehicle and identified himself as a police officer. Defendant responded: " '[H]ow can I help you, sir?' " Prim began talking to defendant about the Budweiser can. Prim took the can from defendant, *771 smelled it, and observed that it was cold and about a third full. It smelled like beer. Prim noticed that defendant was sweating and had "dried, chapped lips" and "fluttering eyelids." Defendant was wearing a long T-shirt that covered his waistband and the "mid-pocket area of the jean shorts" he was wearing. Prim could not see defendant's "waistband area," and he "couldn't tell" what was in the pockets of defendant's shorts because the T-shirt was "blocking half of the pocket." Prim was able to discern "bulges inside the pocket I could see from the outside." He could tell that the bulges were from "something solid and that they had rounded edges to it, similar shape of a cellular phone."
Prim intended to cite defendant for the two code violations. Because he "couldn't quite determine" the nature of the object in defendant's pocket, "[b]ased on my training and experience, also my own safety, I wanted to conduct a quick pat search to advise [sic ] if it was a weapon or a potential *88 weapon." He was not able to "exclude the possibility" that the object was a weapon. Prim was "unaware if he had a weapon or not" and thought it was possible that defendant had a weapon. In addition, Prim had noticed defendant's "dry, chapped lips, heavy sweating, and fluttering eyelids," which were "consistent with someone under the influence of a stimulant," and Prim was "still investigating" that possibility. Consequently, he wanted to do a pat search because he would need to get closer to defendant to see defendant's pupils and get a closer look at his lips in order to further investigate whether defendant was under the influence of a stimulant. "In order for me to safely do that in that he doesn't have any weapons in his immediate area of his hands, I conducted a pat frisk search to ensure my safety before I continued with the investigation." Prim had also observed that defendant was significantly taller and heavier than either Prim or his partner.
Prim had defendant put his hands behind his back. He held defendant's hands with one hand while he patted defendant's clothing with the other. During the 20-second pat search, Prim found no concealed weapons. The pat search gave Prim "a better idea" of the nature of the bulges. "I was able to detect it was a possible cell phone and a possible lighter" in defendant's right front pocket. After the pat search, Prim performed a "Romberg" test and "noticed symptoms of stimulant use." On that basis, Prim arrested defendant and searched him incident to that arrest. During that search, Prim removed a cell phone, a lighter, and "a plastic baggy" from defendant's right front pocket and a wallet from defendant's back pocket. The "baggy" contained what appeared to be methamphetamine. Neither Prim nor his partner drew a weapon at any point during their interaction with defendant.
The superior court found Prim's testimony to be "credible." Although the court deemed it irrelevant that defendant was larger than either of the two officers, the court accepted Prim's explanation that he needed to do a pat search to facilitate further investigation of whether defendant was under the influence of a stimulant. The court credited Prim's observation that during that investigation, Prim "would not be able to see [defendant's] hands. [¶] And he was concerned about officer safety and concerned specifically because of the bulge in the defendant's pocket." The court concluded that the pat search was supported by reasonable suspicion and denied the motion.
II. Analysis
Defendant contends that Prim had "no basis to believe appellant was armed after *772 he saw a cellphone-shaped object in appellant's pants pocket."
"A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. [Citation.] 'The standard of appellate review of a trial court's ruling on a motion *89 to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]' " ( People v. Redd (2010) 48 Cal.4th 691, 719, 108 Cal.Rptr.3d 192, 229 P.3d 101.)
A pat search is justified only where the police officer conducting the search can "point to specific and articulable facts which, taken together with rational inferences from those facts" demonstrate that the officer "has reason to believe that he is dealing with an armed and dangerous individual ...." ( Terry v. Ohio (1968) 392 U.S. 1, 21, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889.) While "[t]he officer need not be absolutely certain that the individual is armed" ( Terry , at p. 27, 88 S.Ct. 1868 ), "[a]n inchoate and unparticularized suspicion or hunch is not sufficient, nor is the fact the officer acted in good faith." ( In re H.M. (2008) 167 Cal.App.4th 136, 143-144, 83 Cal.Rptr.3d 850.) "Where specific and articulable facts are absent, the pat search cannot be upheld." ( Ibid. )
Prim's testimony at the suppression hearing failed to identify any "specific and articulable facts" supporting a reasonable inference that defendant was armed . My colleagues conclude that Prim's observation of the "bulge" in defendant's pocket supported an inference that defendant was armed. They rely on the United States Supreme Court's decision in Pennsylvania v. Mimms (1977) 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 ( Mimms ). In Mimms , the defendant was stopped for driving a vehicle with an expired license plate. When the defendant stepped out of the vehicle at the officer's request, the officer noticed a large bulge under the defendant's jacket. Fearing that the bulge was a weapon, the officer frisked the defendant and discovered a firearm in the defendant's waistband. ( Mimms , at p. 107, 98 S.Ct. 330.) The United States Supreme Court found: "[T]here is little question the officer was justified. The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of 'reasonable caution' would likely have conducted the 'pat-down.' " ( Mimms , at p. 112, 98 S.Ct. 330.)
Unlike the bulge under Mimms's jacket, which the officer feared was a weapon, Prim did not claim to fear that the cell-phone-shaped bulge in defendant's pocket was a weapon. Nor did he identify any specific fact upon which he could have based a reasonable suspicion that the bulge was a weapon. Instead, Prim's testimony was that he was "unaware if [defendant] had a weapon or not" and could not "exclude the possibility" that the bulge was a weapon. Prim did not even claim that he had a "hunch" that the bulge was weapon.
*90 My colleagues' repeated claims that "Officer Prim suspected that the bulge might be a weapon" are inaccurate and misleading. Prim never testified that he "suspected that the bulge might be a weapon." Yet my colleagues make this inaccurate claim repeatedly. On page 2 of the majority opinion, my colleagues say: "The officer conducted a pat search because he suspected that the bulge might be a weapon ...." On page 8 of the majority opinion, my colleagues say: "The gist of this testimony *773 was that Officer Prim suspected that the bulge might be a weapon." Also on page 8 of the majority opinion, my colleagues say: "The essence of this testimony was that Officer Prim suspected that the bulge might be a weapon." On page 9 of the majority opinion, my colleagues say: "Officer Prim suspected that the bulges might be a weapon."
Prim did not testify that he "suspected" that the bulge might be a weapon, and this was neither the "gist" nor the "essence" of his testimony. Instead, he testified that he "couldn't quite determine" the precise nature of the cell-phone-shaped object in defendant's pocket and could not "exclude the possibility" that the object was a weapon. Prim never articulated a suspicion that the bulge might be a weapon but only a lack of certainty as to the precise nature of the cell-phone-shaped object. By basing their conclusion that the pat search was justified on this unsupported inference, my colleagues undermine their analysis.
My colleagues' reliance on United States v. Chaney (1st Cir. 2009) 584 F.3d 20 ( Chaney ) is misplaced because Chaney is readily distinguishable. Chaney was the passenger in a vehicle that was stopped for an unlit headlamp. ( Chaney , at p. 22.) When the officer asked Chaney to identify himself, Chaney provided a false name, was fidgety and nervous, and avoided eye contact. The officer noticed a "bulge" that was "about the size of a fist" in the front pocket of Chaney's jeans. ( Chaney , at pp. 22-23.) The officer "testified that in his experience, people sometimes give a false name when they are carrying a concealed weapon without the required permit." ( Chaney , at p. 26.) The officer was "concerned that the bulge might be a weapon," and he asked Chaney what was in that pocket. Chaney did not respond and became more nervous. ( Chaney , at p. 23.) When the officer repeated the question, Chaney "shifted his weight," reached into his rear pocket, produced a wad of napkins, and told the officer that there was nothing in his front pocket. The officer noticed that when Chaney moved the "bulge ... remained rigid." The officer again directed Chaney's attention to the front pocket containing the bulge, and Chaney "shoved" the napkins into the pocket, pushing the "bulge" lower. ( Ibid. ) It was only at this point that the officer decided to conduct a pat search, which led to the discovery of a weapon in Chaney's pocket. ( Chaney , at p. 24.) The First Circuit Court of Appeals rejected Chaney's claim that the pat search was unjustified. ( Chaney , at p. 27.)
*91 The facts of this case are not remotely similar to those in Chaney . The First Circuit upheld the pat search because "Chaney's evasiveness and failure to identify what was in his pocket, coupled with the size and rigid nature of the object, gave Officer Brown a specific articulable basis for suspecting that Chaney might be armed, thereby justifying a pat-down search." ( Chaney , supra , 584 F.3d at p. 27.) The specific articulable facts present in Chaney are precisely what was lacking in this case. The officer in Chaney , unlike Prim, identified multiple specific and articulable facts suggesting that the bulge in Chaney's pocket was a weapon. Chaney had provided a false name, which the officer knew to be associated with illegal weapon possession, and was evasive in response to inquiries about the contents of the pocket. "[C]oupled with the size and rigid nature of the object" in Chaney's pocket, these facts supported a reasonable suspicion that the object was a weapon. None of those facts was present here. Defendant was polite, cooperative, and responsive to Prim's inquiries. Nothing about the cell-phone-shaped "bulge" in defendant's pocket suggested that it was anything other than a cell phone, and nothing *774 about defendant's conduct indicated that he was carrying a weapon. I find no support for my colleagues' position in Chaney .
My colleagues maintain that People v. Dickey (1994) 21 Cal.App.4th 952, 27 Cal.Rptr.2d 44 ( Dickey ) is "distinguishable" because the deputy in Dickey did not provide any specific and articulable facts indicating that the defendant was armed. (Maj. opn., ante , at p. 748.) In Dickey , "[t]he deputy testified that he performed the patdown search for 'officer safety' and because appellant 'potentially may have been armed.' " ( Dickey , at p. 956, 27 Cal.Rptr.2d 44.) The sole difference between Dickey and this case is Prim's observation of the cell-phone-shaped bulge in defendant's pocket. However, nothing about that bulge suggested that defendant was armed, rather than merely in possession of a cell phone. The deputy's testimony in Dickey was indistinguishable from Prim's testimony that he could not "exclude the possibility" that defendant was armed. I agree with the Dickey court that "[w]ithout 'specific and articulable' facts which show that the suspect may be armed and dangerous, these conclusions add nothing. In every encounter with a citizen by the police, the citizen may potentially be armed." ( Dickey , at p. 956, 27 Cal.Rptr.2d 44.)
When an officer cannot articulate any fact that supports something more than a mere possibility that a citizen is armed, the officer is not entitled to conduct a pat search. Here, the pat search was unjustified, and I would hold that the superior court erred in denying defendant's suppression motion.

Defendant does not challenge the validity of the detention.