Filed 11/24/25 P. v. Williams CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY DAVIS WILLIAMS,<br><br>    Defendant and Appellant. | 2d Crim. No. B340087<br>(Super. Ct. No. 24CJCF01313)<br>(Los Angeles County) |

Anthony Davis Williams appeals from the judgment after he pleaded no contest to one count of being a felon in possession of a firearm. (Pen. Code § 29800, subd. (a)(1).)[1] He contends the trial court erred when it denied his motion to suppress the evidence pursuant to section 1538.5 because the officer who conducted a "pat-down" search lacked reasonable suspicion that he was armed and dangerous. We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

*Facts and Procedural Background*[2]

In February 2024, Los Angeles Police Department Officers Felipe Mata and Julia Varela were working in the Vice Unit. They were responsible for monitoring the Figueroa corridor, an area notorious for pimping, prostitution, and human trafficking. At approximately 12:25 a.m., Officer Mata was driving down Figueroa Street in an undercover vehicle when he observed a series of vehicles parked in the middle of a two-way street, blocking traffic in violation of Vehicle Code section 22500. The area was "congested" with numerous women "dressed in provocative clothing." Officer Mata believed the women to be commercial sex workers.

Officer Mata saw appellant exit his vehicle from the driver's side. He was the sole occupant. Appellant, along with several other men, "aggressively" approached the women, "circling" them. Officer Mata believed the men were trying to commit a robbery or pander the women. Based on his observations and based on the vehicle code violation, he called for marked patrol vehicles to initiate a stop.[3]

Officer Varela, who was in uniform and driving a marked patrol vehicle, responded to the call. Upon arrival, she observed a group of men shouting at the women, acting aggressively, and trying to get their attention. Appellant was standing outside his vehicle and appeared to be reaching for one of the women's arms,

---

[2] We summarize these facts from the preliminary hearing transcript.

[3] CALCRIM No. 1151 defines "pandering" alternatively as persuading, procuring, arranging, encouraging, or inducing a person to become a prostitute.

2

"as if he was trying to tell her to like come." Officer Varela believed appellant was attempting to pander the woman and activated her patrol lights. When appellant saw Officer Varela, he tried to get back into his vehicle. Officer Varela told appellant, "'No, you have to step out,'" that he was being detained for the traffic violation and possible involvement in "pimp[ing] and pandering." Appellant appeared nervous, fidgety, scared, and "a little bit uncooperative." Based on Officer Varela's training and experience, individuals who are uncooperative, fidgety, and nervous "have a weapon on them."

Officer Varela placed appellant in handcuffs, conducted a pat down search of his waistband area and front right thigh area, where she recovered an unloaded nine-millimeter handgun. The detention and pat-down search lasted approximately 40 seconds.

*Section 1538.5 Motion to Suppress*

Appellant filed a section 1538.5 motion to suppress the evidence recovered during the detention, including the firearm. The suppression motion was heard concurrently with the preliminary hearing.

The magistrate denied the suppression motion and explained her reasoning as follows:

"[I]n taking the totality of both officers' testimony and observations, it's clear that there was reasonable suspicion to not only detain, but to arrest the defendant. His vehicle, along with two others, were parked in the middle of the road and appeared to be circling women that were identified as being possible sex workers. But that's not the crux of it. Their safety was apparently [of] paramount concern . . . [to] Officer Mata, the undercover officer that testified to seeing this to begin with. The defendant was clearly in violation of a vehicle code section by

3

blocking the vehicles, Vehicle Code 22500[,] and being outside of his vehicle. No vehicles had the ability to pass in either direction. . . . He was subject to arrest because of that vehicle violation. And . . . taking into consideration all of the observations that were made, it appears that there was reasonable suspicion to . . . arrest and subject to the arrest, finding the gun did not violate the unlawful detention of time and did not violate the defendant's right."

Appellant renewed the motion to suppress pursuant to section 1538.5 in superior court. He did not present any new evidence. This time, defense counsel acknowledged that appellant "may have been justifiably detained" because his vehicle was blocking the road. However, counsel argued, "a traffic stop, without more, does not warrant a pat down search." Counsel further argued that appellant "may have been talking to a prostitute, but the officers did not establish any reason or suspicion that [he] was armed and dangerous."

The People argued that the Vehicle Code violation was not the only basis for Officer Varela's reasonable suspicion. She also relied on appellant's potential involvement in "pimping and pandering commercial sex workers."

Defense counsel argued that appellant "may have been there in an area of high prostitution," but there was "nothing to indicate that he might have been, or he was even involved in any sort of crime of prostitution."

The trial court denied the motion to suppress, reasoning that based on the preliminary hearing transcript and the officers' knowledge of the area, there was a rational suspicion to conduct a pat-down search.

*Discussion*

Appellant contends the trial court erred in finding that Officer Varela had a reasonable suspicion that he was armed and dangerous when she patted him down.

In *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), the United States Supreme Court held that an officer may pat down a suspect for weapons if that officer has reason to believe a suspect is armed and dangerous, regardless of whether probable cause exists to arrest the individual for a crime. (*Id.* at p. 27.)

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that [their] safety or that of others was in danger." (*Terry, supra,* 392 U.S. at p. 27.) An inchoate, unparticularized suspicion or hunch is insufficient. (*In re Jeremiah S.* (2019) 41 Cal.App.5th 299, 305.) Instead, the officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, warrant that intrusion." (*Terry*, at p. 21; *People v. Medina* (2003) 110 Cal.App.4th 171, 176.)

Because the initial motion to suppress was made during the preliminary hearing, and the renewed motion was submitted on the transcript of that hearing, we disregard the findings of the trial court and review the determination of the magistrate who ruled on the initial motion to suppress. (*Blakes v. Superior Court* (2021) 72 Cal.App.5th 904, 910.) We review the evidence in the light most favorable to the magistrate's ruling and will uphold the magistrate's express or implied findings if supported by substantial evidence. (*Ibid.*) In determining whether, on the facts presented, the pat-down search was reasonable, we exercise our independent judgment. (*People v. Camacho* (2000) 23 Cal.4th

824, 830.)  "In doing so we do not consider each fact in isolation. Instead, 'we must consider "the totality of the circumstances—the whole picture."'" (*People v. Flores* (2024) 15 Cal.5th 1032, 1043 (*Flores*).)

Here, the pat down search of appellant was lawful based on the totality of the circumstances.  Appellant was parked in the middle of the street, blocking traffic, and standing outside of his vehicle, a violation of Vehicle Code section 22500.  It was after midnight.  The area  was "notoriously known" for human trafficking, prostitution, pimping and pandering.  Appellant was shouting and behaving "aggressively" toward the women, who were believed to be commercial sex workers.  When Officer Varela activated her patrol lights, appellant attempted to get back into his vehicle, he appeared "very nervous," "fidgety," and was "uncooperative."

These factors, taken together, are sufficient to support a reasonable suspicion that appellant was armed and dangerous. Indeed, Officer Varela testified that in her experience, individuals who exhibit these indicators usually have a weapon on them, as was the case here.  (See *Flores*, *supra*, 15 Cal.5th at p. 1046 [a trained police officer could draw inferences "'that might well elude an untrained person'"].)

Notwithstanding these facts, appellant contends Officer Varela lacked the "requisite reasonable suspicion" that he was armed and dangerous.  For example, he contends that because he was already in handcuffs when Officer Varela patted him down, he no longer posed a threat to officer safety.  He claims "[a] reasonably prudent person would not believe that a handcuffed individual poses a threat to his or her safety" because he was

6

physically restrained and unable to "easily escape" or use his hands to reach for weapons.

Although handcuffs may temporarily restrain a person, there is still a risk that a suspect will flee or do an officer harm. When an officer reasonably suspects that an individual that he or she is investigating at close range is presently armed and dangerous, it would be "unreasonable to deny an officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (*Terry, supra,* 392 U.S. at p. 24.) As we have previously stated, "The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957.)

Appellant also attempts to examine the factors in isolation to conclude each is insufficient alone to justify the pat down search. For example, he contends his presence in a high crime area is not enough to justify the weapons search, pandering is not an inherently violent crime, and nervousness or uncooperative behavior alone are not sufficient to warrant a pat down search. "But looking at 'factors in isolation from each other does not take into account the "totality of the circumstances."' [Citation.] Instead, it employs a segmented analysis that *Terry* precludes." (*People v. Esparza* (2023) 95 Cal.App.5th 1084, 1092; see also *Flores*, *supra*, 15 Cal.5th at p. 1043.)

Considering the totality of the circumstances, we conclude there was no Fourth Amendment violation. The trial court therefore properly denied appellant's motion to suppress the evidence resulting from the pat down search.

7

*Disposition*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, Acting P. J.


We concur:



BALTODANO, J.



CODY, J.

8

Mildred Escobedo, Judge
Superior Court County of Los Angeles

_____

Jennifer Peabody, Executive Director, Monique Hemli-Munoz, Staff Attorney, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and Chelsea Zaragoza, Deputy Attorney General, for Plaintiff and Respondent.