[No. E018792. Fourth Dist., Div. Two. Oct. 28, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
GILBERT AVILA, Defendant and Appellant.

COUNSEL

Brian A. Wright, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HOLLENHORST, J.—During a preliminary hearing defendant's Penal Code section 1538.5 suppression motion was denied. Following a jury trial, defendant was convicted of possession of methamphetamine (Health & Saf. Code, § 11378), possession of cocaine (Health & Saf. Code, § 11350),[1] and possession of methamphetamine for sale (Health & Saf. Code, § 11378), while personally armed with a firearm (Pen. Code, § 12022, subd. (c)). The trial court denied probation, and imposed a total sentence of seven years and eight months.

Defendant appeals, contending the trial court erroneously denied his motion to suppress, the detention lacked probable cause, and the patdown search was unlawful. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 1995, at approximately 4:30 p.m., Officer Jones saw defendant, Gilbert Avila, walking across a parking lot. The officer observed defendant littering. Moreover, the officer noted that defendant's manner while littering was "suspicious." Defendant first walked to the passenger side of a truck, then to the driver's side, then back to the front of the truck with his hand directly in front of his body. Finally, he dropped a white envelope from his waist.

Officer Jones contacted defendant while defendant was standing in the open driver's side door of the truck. The officer told defendant that he had

[1]The first two counts are the result of an outstanding arrest warrant from 1991 (No. FWV-29625).

observed him littering, and asked defendant for identification. Defendant provided a driver's license in the name of Joseph Vargas. While the officer was talking to defendant, he observed what appeared to be two containers of alcohol on the front seat of the truck. From where the officer was standing, he could not tell if they were full or empty.

Next, the officer observed "a long black metal object" that was similar to a "Mag" flashlight, approximately eight to ten inches from defendant's left hand, behind defendant in the truck. The officer became concerned for his safety, and inquired as to the nature of the object. Without turning around, defendant said that he did not know what the object was. Defendant further stated that the truck did not belong to him, but belonged to a friend of his.[2] Defendant stated that he had illegal alcohol in the truck, but that he did not have any weapons.

The officer told defendant to walk to the back of the truck. Defendant complied, and when he reached the rear of the truck he "assumed the position"[3] without being asked to. The officer then conducted a patdown search of defendant's person for weapons.

While patting down defendant, the officer felt a bulky and somewhat hard object at defendant's ankle. The officer asked what the object was and defendant's reply was unclear. The officer repeated his question and defendant said, " 'It is meth.' " After finding two more bulges, the officer handcuffed defendant and removed three baggies of methamphetamine. Defendant was placed under arrest, and later more methamphetamine and a gun were found in his vehicle.

## DISCUSSION

Defendant contends the trial court erroneously denied his suppression motion because (1) the officer was not justified in performing a patdown search for weapons under the circumstances and (2) even if the patdown search was justified, the officer's inquiry into the nature of the lump exceeded the limits of a patdown search.

### Standard of Review

■ Our standard of review on appeal from the denial of a motion to suppress is well established. We defer to the trial court's factual findings

---

[2]The officer had not asked defendant who the owner of the vehicle was. It was later discovered that defendant *was* the registered owner of the vehicle.

[3]He spread his legs, put his hands behind his head, and interlaced his fingers.

where supported by substantial evidence, but we must exercise our independent judgment to determine whether, on the facts found, the search and seizure was reasonable under the Fourth Amendment standards of reasonableness. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

*The Patdown Search*

Defendant argues that the circumstances surrounding his detention would not lead a reasonable detaining officer to believe that his safety was in danger.

In *Terry* v. *Ohio* (1968) 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889], the Supreme Court held that an officer has the authority to conduct a reasonable search for weapons where that officer has reason to believe a suspect is armed and dangerous, regardless of whether he has probable cause to arrest the individual for a crime. (*Id.* at p. 27 [88 S.Ct. at p. 1883].) Further, the officer need not be absolutely certain that the individual is armed; the crux of the issue is whether a reasonably prudent person in the totality of the circumstances would be warranted in the belief that his or her safety was in danger. (*Ibid.*)

If we apply the *Terry* rule to our facts, the reasonableness of the officer in believing his safety was in danger becomes manifest. Defendant had been observed acting suspiciously, walking around his car, and dropping an envelope from his waist. Officer Jones approached defendant, and then realized that defendant possibly was under the influence of alcohol. Next, the officer saw that a metal object was within eight or ten inches of defendant's hand. The officer became concerned for his safety and asked defendant what the object was. Without even looking to see what the officer was referring to, defendant not only denied any knowledge of the nature of the object, but also denied ownership of the vehicle and admitted he had illegal alcohol in the truck. Finally, when Officer Jones asked defendant to step away from the vehicle, defendant immediately assumed a standard "search" position.

All of these factors, although perhaps individually harmless, could reasonably combine to create fear in a detaining officer. The *Terry* test does not look to the individual details in its search for a reasonable belief that one's safety is in danger; rather it looks to the "totality of the circumstances." (*Terry* v. *Ohio, supra,* 392 U.S. 1, 27 [88 S.Ct. 1868, 1883].) In the instant case, it seems reasonable that these circumstances could generate a belief in a police officer that his safety was in danger. Consequently, the patdown search was justified.

## The Scope of the Search

■ Defendant contends that, even if the patdown search was justified, the officer exceeded the scope of the search by asking defendant about the nature of the lump.

■ *Terry* held that a patdown search must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer. (*Terry* v. *Ohio, supra,* 392 U.S. 1, 26 [88 S.Ct. 1868, 1882-1883].) Further, if the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid. (*Minnesota* v. *Dickerson* (1993) 508 U.S. 366, 373-374 [113 S.Ct. 2130, 2136, 124 L.Ed.2d 334].) However, if contraband is found while performing a permissible *Terry* search, the officer cannot be expected to ignore that contraband. (Cf. *People* v. *Thurman* (1989) 209 Cal.App.3d 817, 825-826 [257 Cal.Rptr. 517].)

■ Probable cause has been generally defined as a state of facts that would lead a reasonable officer of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that a crime had been or was being committed. (*People* v. *Mims* (1992) 9 Cal.App.4th 1244, 1247 [12 Cal.Rptr.2d 335].) When an officer has probable cause to arrest a person for narcotics possession, the warrantless search becomes justified as a search incident to arrest. (*People* v. *Dibb* (1995) 37 Cal.App.4th 832 [43 Cal.Rptr.2d 823].) An officer may thoroughly search an individual incident to a lawful arrest. (See *New York* v. *Belton* (1981) 453 U.S. 454, 459-460 [101 S.Ct. 2860, 2863-2864, 69 L.Ed.2d 768].) Moreover, when the formal arrest follows quickly on the heels of the challenged search, it is not important that the search preceded the arrest rather than vice versa. (*Rawlings* v. *Kentucky* (1980) 448 U.S. 98, 111 [100 S.Ct. 2556, 2564-2565, 65 L.Ed.2d 633].)

■ In the instant case, the officer was performing a justified *Terry* patdown search. He had finished patting the upper body of defendant, and was proceeding down the first leg.[4] Officer Jones felt a bulky and somewhat hard object, and did not know if it was a weapon or not. He then asked defendant what the object was, *without* removing it. Defendant told the officer that it was "meth"—an illegal narcotic. Neither did the officer remove an unidentified object, nor did defendant equivocate in his answer. Instead, defendant confessed to the crime. (Cf. *People* v. *Valdez* (1987) 196 Cal.App.3d 799, 803-806 [242 Cal.Rptr. 142].) The Fourth Amendment was not designed to protect a defendant from his own candor.

---

[4]It is not unreasonable to pat the legs when searching for a concealed weapon. " '[T]he officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the . . . area about the testicles, and [the] entire surface of the legs down to the feet.' [Citation.]" (*Terry* v. *Ohio, supra,* 392 U.S. 1, 17, fn. 13 [88 S.Ct. 1868, 1877].)

Nonetheless, at oral argument, defendant referred to the facts in *Valdez* and argued that Officer Jones's question was "a preliminary step into the search of [Avila's] person, not a mere factfinding question pertaining to the authorized search for heroin." (*People* v. *Valdez, supra,* 196 Cal.App.3d 799, 807.) We disagree. In *Valdez,* while Officer Gouge was executing a search warrant at a yard used for storage and auto body repair, he ordered defendant Jose Torres to put his hands on the hood of a car. As Officer Gouge conducted a patdown search for weapons, he felt a 35-millimeter plastic film canister in Torres's right front pocket. He knew that the object was not a weapon, and saw no photography equipment anywhere in the area. However, based on his experience, he believed that the canister contained drugs. (*Id.,* at p. 803.)

With his hand on the bulge in Torres's right front pocket, Officer Gouge asked, " 'What is this?' Torres removed the canister from his pocket and put it on the hood of the car. Officer Gouge asked him to open it. Torres responded, 'You can open it if you want to.' Officer Gouge opened the canister and found the cocaine." (*People* v. *Valdez, supra,* 196 Cal.App.3d 799, 803.)

On appeal, Torres's conviction was reversed. Our colleagues in Division One of this district found that the evidence of the canister should have been excluded because "it was seized in violation of the Fourth Amendment of the federal Constitution. [Citation.]" (*People* v. *Valdez, supra,* 196 Cal.App.3d 799, 807-808.) The appellate court reasoned that Officer Gouge's questions were not asking permission to search, but were requesting information and compliance. Further, Officer Gouge knew that the canister was not a weapon. Thus, when he asked " 'What is this?' " he did so as "a preliminary step into the search of Torres's person, not a mere factfinding question pertaining to the authorized search for heroin." (*Id.,* at p. 807.)

Defendant's application of *Valdez* to his situation is misplaced. Unlike Officer Gouge, Officer Jones did not know if the bulky and somewhat hard object at defendant's ankle was a weapon or not. Thus, he asked defendant what the object was. In reply, defendant said, " 'It is meth.' " Officer Jones's question was justified by the patdown search for weapons because he did not know whether the object was a weapon or not. The question was not, nor could not be considered, "a preliminary step into the search of [defendant's] person." (*People* v. *Valdez, supra,* 196 Cal.App.3d 799, 807.)

Once defendant told the officer that he had methamphetamine, the officer had probable cause to arrest defendant. Further, since it is unimportant whether a search incident to an arrest precedes the arrest or vice versa, the

officer could thoroughly search defendant *even before* he had officially arrested him—so long as there was probable cause to arrest. (*Rawlings* v. *Kentucky*, *supra*, 448 U.S. 98, 111 [100 S.Ct. 2556, 2564-2565].) The retrieval of the methamphetamine from defendant's socks was lawful as a search incident to a lawful arrest.

The trial court properly denied defendant's suppression motion.

### DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 21, 1998.