Filed 11/17/14  P. v. Lara CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058858 |
| v. | (Super.Ct.No. RIF1204680) |
| JAIME CORTEZ LARA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge. Affirmed.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Alana Butler and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

After the trial court denied defendant and respondent Jaime Cortez Lara's motion

to suppress, defendant pled guilty to the court to one count of possession of heroin for sale (count 1; Health & Saf. Code, § 11351). Defendant additionally admitted allegations he had sustained a prior narcotics conviction (Health & Saf. Code, § 11370.2, subd. (a)), had incurred a prior strike conviction (Pen. Code, §§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)), and had suffered three prior prison terms (Pen. Code, § 667.5, subd. (b)). The court sentenced defendant to the indicated sentence of seven years imprisonment. On appeal, defendant contends the court erred in denying his motion to suppress. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Defendant filed a motion to suppress the evidence against him. At the hearing on the motion, Riverside Sheriff's Deputy Santo Cortez testified that on December 18, 2012, he was on patrol in an unmarked police vehicle with his partner, Sergeant Chris Wagner, when he observed defendant and a probationer named Gloria Martinez standing at an intersection. Cortez knew Martinez as he had arrested her approximately a month earlier for being under the influence of a controlled substance and for a probation violation. Cortez also knew defendant as an active gang member of East Side Riva and former parolee from a number of contacts Cortez had with defendant.

Cortez stopped the vehicle and made contact with Martinez because he wanted to speak with her regarding the status of her probation. Cortez casually greeted defendant. Wagner made contact with defendant. Cortez witnessed defendant fumble with his left hand near his left jacket pocket numerous times. Wagner asked defendant not to reach

2

into his pockets.  Wagner was concerned defendant "could have possibly had a gun, knife, brass knuckles, a weapon that could harm us."[1]  Cortez testified officers were trained to always maintain a suspect's hands in view, outside of the suspect's pockets, so they could ensure the suspect could not obtain a weapon.

Wagner grabbed defendant's hand out of his pocket, got behind him, and conducted a patdown search of defendant.[2]  Wagner "maintained a grasp of" defendant's hands.  Wagner then asked what was in defendant's pocket; defendant responded he did not know, he had just found the object, it was not his.  Wagner asked defendant if he could remove the object from defendant's pocket.  Defendant consented.  Defendant was very nervous and kept saying over and over again that the object was not his, that he found it, and that Wagner should take it.  Defendant told Wagner to remove the object from defendant's pocket several times.

Wagner removed the object from defendant's pocket.  "It was a small metal tin box."  Wagner gave the box to Cortez.  Defendant stated numerous times that he found the item down the street; he said the box was not his.  Cortez opened the container.  Inside were five small balloons containing some kind of substance.

The court found defendant had reached into his jacket several times during the encounter and been asked several times to remove his hand from his pocket.  The court

---

[1] Defendant objected to the statement on the grounds that it was inadmissible hearsay.  The court overruled defendant's objection.

[2] The parties stipulated the search of defendant was conducted without a warrant.

further found Wagner felt the box during his patdown search of defendant; Wagner asked permission from defendant to remove the can from defendant's pocket; defendant consented. Finally, the court found that defendant, "by disclaiming any possessory interest in the canister, essentially waived his standing to raise any issues as to the search of the canister itself." The court denied defendant's motion.

DISCUSSION

"'A defendant may move to suppress evidence on the ground that "[t]he search or seizure without a warrant was unreasonable." [Citation.] A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. [Citation.] "The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment."' [Citations.]" (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.)

A.     The Patdown Search.

Defendant contends the prosecution failed to carry its burden in proving Wagner had a reasonable suspicion of criminal activity on the part of defendant to warrant the patdown search for weapons, particularly since Wagner failed to testify. We disagree.

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other

4

public places and putting questions to them if they are willing to listen. . . .  Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search . . . provided they do not induce cooperation by coercive means. . . .  If a reasonable person would feel free to terminate the encounter, then he or she has not been seized."  (*United States v. Drayton* (2002) 536 U.S. 194, 200-201.)  "The Fourth Amendment permits police officers to approach [individuals] at random to ask questions and to request their consent to searches, provided a reasonable person would understand that he or she is free to refuse. . . ."  (*Id.* at p. 197.)

"'[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.  [Citation.]  While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.  [Citation.]  The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity.  [Citation.]  [¶] . . . [.]' . . . In making such a stop, police may conduct 'a protective patdown search for weapons.'  [Citation.]"  (*People v. Huggins* (2006) 38 Cal.4th 175, 241-242.)

"The validity of a search does not turn on 'the actual motivations of individual officers.'  [Citation.]  But whether a search is reasonable must be determined based upon

the circumstances known to the officer when the search is conducted. '[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him.' [Citations.]" (*People v. Sanders* (2003) 31 Cal.4th 318, 334.)

"[T]he subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment." (*Bond v. U.S.* (2000) 529 U.S. 334, 338, fn. 2; accord *Whren v. U.S.* (1996) 517 U.S. 806, 813; *People v. Letner* (2010) 50 Cal.4th 99, 145.) "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." (*Scott v. U.S.* (1978) 436 U.S. 128, 138.)

Here, although it is unusual that Wagner, the actual officer who searched defendant, did not testify, the circumstances, when viewed objectively, indicate a reasonable basis for conducting a patdown search of defendant for weapons. Defendant was a known gang member who had previously been on parole. Defendant was with someone who was on probation. Wagner did not immediately begin the patdown search of defendant upon his contact with defendant. Rather, Wagner only conducted the patdown search of defendant after defendant repeatedly placed his hands in and out of his pocket after Wagner had asked defendant to keep his hands out of his pocket. This was sufficient justification for a patdown search of defendant to ensure he did not have

weapons upon his person with which he could threaten the officers. (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1237, 1240-1241 [minor's placement of his hands back in his pockets after being told not to warranted patdown search].)

Cortez's testimony supports Wagner's patdown search of defendant for weapons. Although defendant contends Wagner's testimony was necessary to support the People's burden in establishing reasonable suspicion, he cites no case which requires that the searching party testify. Although we agree it would be preferable to have the actual searching officer testify, as discussed above, an objective view of the circumstances as provided by Cortez, a percipient witness to the search, established a reasonable suspicion to conduct a patdown search of defendant for weapons to ensure the safety of the officers.

B. *Miranda.*[3]

Defendant contends he was in custody at the time Wagner asked him what was inside his pocket. Thus, since Wagner failed to read defendant his *Miranda* rights, defendant's exculpatory disclaimer to ownership of the container should have been suppressed. We disagree.

"'[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination . . . .'" (*People v. Neal* (2003) 31 Cal.4th 63, 79.) "'An interrogation is custodial, for purposes of requiring advisements under *Miranda,* when "a person has been taken into custody or

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

7

otherwise deprived of his freedom of action in any significant way."' [Citations.] Whether a person is in custody is an objective test; the pertinent question being whether the person was formally arrested or subject to a restraint on freedom of movement of the degree associated with a formal arrest. [Citation.] '[C]ustody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances.' [Citation.]" (*People v. Linton* (2013) 56 Cal.4th 1146, 1167; accord *People v. Moore* (2011) 51 Cal.4th 386, 394-395.)

"'Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.] When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must "apply a deferential substantial evidence standard" [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, "a reasonable person in [the] defendant's position would have felt free to end the questioning and leave" [citation].' [Citation.]" (*People v. Moore*, *supra*, 51 Cal.4th at p. 395.)

"*Miranda* warnings are not required during the course of a brief detention unless the suspect is placed under restraints normally associated with a formal arrest. When this occurs, *Miranda* warnings are required because the suspect understands the detention is not likely to be 'temporary and brief' and therefore is 'completely at the mercy of the police.' [Citation.]" (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1404; see *People v.*

*Lewis* (1990) 50 Cal.3d 262, 274-275 [casual conversation initiated by the defendant while the defendant sat handcuffed in back of police car not custodial interrogation].)

Here, Cortez described the initial encounter with defendant as casual. Cortez had encountered defendant on prior occasions during which they engaged in casual conversations. In this instant, Cortez greeted defendant casually: "It's very jovial, very casual." Wagner only conducted the patdown search of defendant after he placed his hands in his pocket after Wagner had asked him not to do so. After the search was completed, Wagner asked what was the hard object in defendant's pocket. Defendant responded he did not know, he had just found it, and it was not his. Wagner's "question was justified by the patdown search for weapons because he did not know whether the object was a weapon or not." (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1076 [Fourth Dist., Div. Two].) Defendant was not handcuffed or placed in the patrol vehicle. Thus, defendant was not placed under restraints normally associated with formal arrest. Therefore, Wagner was not required to read defendant his *Miranda* rights before asking him what the object in his pocket was. Wagner's question, and defendant's answer, was properly considered by the court in ruling on the motion to suppress.

    C.     Defendant's "Consent" to Removal of the Container.

Defendant contends his consent to Wagner's removal of the object from defendant's pocket was the result of a submission to authority and not freely or voluntarily given. Thus, he maintains the container was improperly removed and should have been excluded from the evidence against him. We disagree.

9

"Where, as here, the prosecution relies on consent to justify a warrantless search or seizure, it bears the 'burden of proving that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied assertion of authority. [Citation.]' [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 341.)

Here, as in *Avila* cited *ante*, Wagner conducted a patdown search of defendant for officer safety during which he encountered a hard, metallic object. (*People v. Avila*, *supra*, 58 Cal.App.4th at p. 1076.) Wagner asked defendant what was the object. Defendant responded he did not know, he had just found it, and it was not his. Wagner asked if he could grab the object. Defendant consented. Defendant kept saying over and over again that the object was not his and for Wagner to go ahead and take it. As the court below found, defendant's repeated denials regarding knowledge of the nature of the object and offers to Wagner to take it were consensual responses to Wagner's request to be allowed to remove the object.

D.     Abandonment of the Container.

Defendant contends the court's reliance on the doctrine of abandonment to justify Cortez's opening of the container fails because defendant's protestations of non-ownership did not satisfy the requirements of legal abandonment. Moreover, he maintains that opening the container exceeded the scope of any consent defendant gave to removal of the item from his pocket. We disagree.

10

"The question whether property is abandoned is an issue of fact, and the court's finding must be upheld if supported by substantial evidence. [Citation.]" (*People v. Daggs* (2005) 133 Cal.App.4th 361, 365.) "[A] total disclaimer of any interest in the area or item searched at the time of the search . . ., or the absence of *any* evidence of ownership, possession or control of such area or item . . ., will preclude a successful challenge to the legality of that search. In the former situation, the defendant has in effect given the authorities the green light to proceed insofar as his or her own Fourth Amendment rights are concerned. In the latter, there is a total failure of proof.' [Citation.]" (*People v. Allen* (1993) 17 Cal.App.4th 1214, 1221-1222.)

"Property that is abandoned is no longer subject to Fourth Amendment protection because one does not have a reasonable expectation of privacy in property that has been abandoned. [Citation.]" (*People v. Pereira* (2007) 150 Cal.App.4th 1106, 1112.) "The appropriate test is whether defendant's words or actions would cause a reasonable person in the searching officer's position to believe that the property was abandoned. [Citation.]" (*Id.* at p. 1113.)

Here, defendant's repeated assertions that the object was not his, that he found it, and that Wagner should take it, abandoned any interest defendant may have had in the container. By defendant's "vigorous oral disclaimers, [defendant] affirmatively indicated that [he] had no interest in preserving the secrecy of the contents of the [container, he] had no legitimate expectation of privacy therein." (*U.S. v. Tolbert* (1982) 692 F.2d 1041, 1045; *U.S. v. Washington* (4th Cir. 1982) 677 F.2d 394, 396 [The defendant's denial three

11

times that a bag belonged to her meant officers could justifiably rely on her statements to believe they would not violate her rights in opening it.].)  Thus, substantial evidence supported the court's determination that defendant had legally abandoned the box and the motion to suppress was properly denied.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____<br>J.

We concur:

RAMIREZ_____<br>P. J.

KING_____<br>J.

12