Filed 4/22/15  P. v. Tolliver CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

|  |  |
|---|---|
| THE PEOPLE, | C075855 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F06252) |
| v. | |
| RESHON ANDRE TOLLIVER, | |
| Defendant and Appellant. | |

After his motion to suppress evidence was denied, defendant Reshon Andre Tolliver pleaded no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and admitted having served a prior prison term (Pen. Code, § 667.5, subd. (b)).[1]  On December 6, 2013, defendant was sentenced to local prison for the middle term of two years plus one year for the prior prison term.

---

[1]  Undesignated statutory references are to the Penal Code.

1

Sixty-one days later, on February 5, 2014, notices of appeal were filed in propria persona and by trial counsel. The notice filed by counsel indicates that the appeal is based on the denial of the suppression motion. Contrary to the People's argument, the appeal does not require a certificate of probable cause. (Cal. Rules of Court, rule 8.304(b)(4)(A).) After briefing was completed, we granted defendant's motion for constructive filing of the late notice of appeal.

On appeal, defendant contends the trial court deprived him of his right to be free of unreasonable searches and seizures when it denied his motion to suppress evidence seized during an unlawful detention. We affirm.

FACTS FROM SUPPRESSION HEARING

*Prosecution Case-in-chief*

On September 17, 2012, around 5:00 p.m., Elk Grove Police Officers Jason Kearsing and Chris Morrow were dispatched to Coins, Currency, and Collectibles regarding a report of two males attempting to pawn a large quantity of women's jewelry. The men were described as black males, 20 to 30 years of age, tall and tattooed, wearing white shirts, and driving a newer model black car. The reporting party said, "[i]t just seems really odd these two guys have all these women's jewelries."

Upon arriving, the officers saw two black males, both with tattoos and white shirts, leaning into a black PT Cruiser, one on the driver's side and the other on the passenger's side. Officer Kearsing proceeded into the shop to contact the reporting party. Officer Morrow contacted the two men who were later identified as Christopher Chapman and defendant.

Officer Morrow asked the men to sit in the PT Cruiser "just to keep[] them there at the scene for [his own] safety . . . ." Then Morrow approached the driver's side of the car. Morrow decided to detain the men in order to permit further investigation of their attempt to sell property that might be stolen. Both men were cooperative but Morrow found them "argumentative" in that they questioned the reason for their detention.

2

Morrow told the men that they were being detained to permit further investigation of the report he had received regarding possibly stolen jewelry. Defendant advised Morrow that the jewelry had belonged to his mother who had just passed away and that he intended to pawn it.

During this time, Officer Kearsing contacted the reporting party, Mike Hickman, inside the collectibles shop. Hickman told Kearsing that the men were attempting to pawn jewelry and coins. Kearsing was aware of some recent burglaries in Elk Grove in which valuable coins had been taken, and he thus suspected the men of possible criminal activity. Hickman told Kearsing that the men had coins that may match the description of stolen coins described in a list that recently had been disseminated to the pawn shop. Kearsing then contacted Officer Morrow who provided Kearsing identification cards for the two men and asked Kearsing to conduct a records check.

The records check revealed that Chapman was on active parole through August 2014. The check revealed that defendant had an outstanding aggravated assault warrant from Florida, which was nonextraditable, and which cautioned that defendant had violent tendencies. Based on Chapman's parole status, Officer Morrow decided to do a parole search of the car.

For officer safety, Officer Kearsing decided to detain both men in the rear of a patrol car, Chapman because of his parole status and defendant because of his size and reported violent tendencies. After detaining Chapman in his patrol car, Kearsing returned to assist Officer Morrow with defendant who was not complying with Morrow's request to step out of the PT Cruiser. After Morrow placed defendant in a control hold, Kearsing handcuffed him and escorted him to Kearsing's patrol car. Once there, Kearsing

conducted a *Terry*[2] patsearch of defendant's person based upon his reported violent tendencies and his prior convictions for possession of ammunition.

During the patsearch, Officer Kearsing felt what appeared to be plastic in the right pant leg of defendant's shorts. Based on his training and experience, Kearsing knew that it was common for people to keep marijuana and other illicit drugs in plastic inside their pants pockets.

Officer Kearsing then asked defendant if he had marijuana on his person. Defendant responded that "it was weed." Kearsing removed the plastic bag from defendant's pocket. Inside the bag were three smaller bags, one of which contained a white crystal-like substance that Kearsing recognized as methamphetamine. Kearsing field tested the substance. The test was presumptively positive for methamphetamine. Kearsing then placed defendant under arrest.

During a search incident to arrest, Officer Kearsing discovered one round of overpressure .38-Special ammunition in the bag containing the jewelry defendant had attempted to sell. As a convicted felon, defendant was prohibited from possessing ammunition.

*Defense*

James Fugate, an owner of the collectibles shop, testified that on September 17, 2012, two "very nervous" gentlemen appeared at the front door and were admitted into the shop. Fugate met the men at a side counter. One of the men had a handful of jewelry; he explained that his mother had just died and he needed to sell the jewelry to pay for funeral expenses. Fugate felt uncomfortable because the items were of different styles that would appeal to women of different ages and thus did not appear to be a collection owned by a single person. Defendant told Fugate that he had to go get more

---

[2] *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889] (*Terry*).

4

jewelry out of his car.  Both men evidently left the shop but once outside they proceeded in different directions.  Fugate told Hickman to call the police.

DISCUSSION

Defendant contends the trial court deprived him of his constitutional right to be free of unreasonable searches and seizures when it denied his motion to suppress evidence seized during an unlawful detention.  We disagree.

1. *Background*

On September 25, 2013, defendant filed a motion to suppress evidence pursuant to section 1538.5.  Defendant's counsel argued that the initial detention was unlawful because there was insufficient evidence to support a reasonable suspicion that a crime was being committed or about to be committed.

The trial court began its analysis by recognizing that "two young black males trying to sell jewelry, is not a rational basis for a stop or a detention."  The court stated in part:  "But I think the officers can give weight to the opinion of the Coin, Currency, and Collectibles shopkeeper who, again, is a citizen informant.  [The shopkeepers are] identified.  They are calling 9-1-1 to have the officers come here.  It's not an anonymous informant who's never going to be questioned or followed up or held accountable to.  They are in the business of buying coins, currency, and collectibles.  And the officers, through the 9-1-1 dispatch, get the merchant's opinion that the merchant believes that he has hot stuff here.  And then a partial explanation, It seems really odd these two guys have all of these women's jewelry.  [¶]  It seems to me the brief nature of the initial detention balanced against the fact that the two gentlemen are right next to a car, have left the store, and unless the officers freeze the scene, they are not going to be able to follow up.  [¶] . . . [¶]  But in terms of the initial detention, it's fairly minimal while the other officer goes into the shop to learn more . . . .  [¶]  . . . [A] brief detention to question the men, to question the merchant more--does not seem to be unreasonable.  That's the touchstone in the Fourth Amendment analysis."

5

Defense counsel did not challenge the officer's decision to conduct a *Terry* patsearch of defendant. Instead, counsel challenged the officer's search of defendant's person after feeling a plastic bag in his pocket. Defense counsel proffered defendant's testimony that he had a valid marijuana card. The trial court nevertheless found the officer acted reasonably when he removed the marijuana from the pocket following the exchange in which he asked defendant if he had marijuana and defendant said he did. Once defendant said that the plastic bag contained marijuana, the officer had probable cause to retrieve the bag from defendant's pocket.

The trial court then denied the suppression motion stating: "For the reasons that I've already stated for the record, I would deny the motion to suppress. The initial detention was valid. The initial *Terry* pat-down was valid. Then when [defendant] said the object the officers felt in his pocket was marijuana, that gave probable cause to retrieve the bag. Then the bag was found to contain marijuana and methamphetamine and then was probable cause for the arrest. I think that takes care of the issues on the motion to suppress."

## 2. *Standard of Review*

" 'A defendant may move to suppress evidence on the ground that "[t]he search or seizure without a warrant was unreasonable." (§ 1538.5, subd. (a)(1)(A).) A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. [Citation.] "The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" ' " (*People v. Suff* (2014) 58 Cal.4th 1013, 1053, quoting *People v. Redd* (2010) 48 Cal.4th 691, 719, fn. omitted; accord, *People v. Williams* (2013) 56 Cal.4th 165, 184.)

"Accordingly, '[w]e view the evidence in a light most favorable to the order denying the motion to suppress' [citation], and '[a]ny conflicts in the evidence are resolved in favor of the superior court ruling' [citation]. Moreover, the reviewing court 'must accept the trial court's resolution of disputed facts and its assessment of credibility.' [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 979.)

### 3. *Initial Detention*

" ' "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." ' " (*People v. Suff, supra,* 58 Cal.4th at pp. 1053-1054.)

As a general proposition, "private citizens who are witnesses to or victims of a criminal act, absent some circumstance that would cast doubt upon their information, should be considered reliable. . . . [N]either a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities." (*People v. Ramey* (1976) 16 Cal.3d 263, 269, fn. omitted.)

Defendant does not dispute that the shopkeepers were reliable, but he claims their information was not sufficient. We disagree.

The shopkeepers related information that Chapman and defendant were attempting to sell them jewelry and that it seemed "really odd these two guys have all these women's jewelries." As the trial court stated, the shopkeepers were "in the business of buying coins, currency, and collectibles." Thus, the officers had a basis to believe the shopkeepers had knowledge or expertise as to whether jewelry transactions that potential customers propose to them suggest criminal activity. In terming the circumstances very odd, the shopkeepers voiced more than the sort of "inarticulate hunch[]" deemed insufficient in *Terry, supra,* 392 U.S. at page 22. (See *In re Tony C.* (1978) 21 Cal.3d 888, 893.)

7

This case is not at all like *People v. Durazo* (2004) 124 Cal.App.4th 728, cited by defendant, in which there was no evidence that the defendant was carrying out a threat four days after the victim claimed the threatened act was to have occurred. (*Id.* at p. 735.) Rather, in this case, "the tipster . . . provided a firsthand, contemporaneous description of the [suspected] crime as well as an accurate and complete description of the perpetrator[s] and [their] location, the details of which were confirmed within minutes by the police when they arrived." (*People v. Dolly* (2007) 40 Cal.4th 458, 468.)

### 4. *Continued Detention*

Defendant contends the officers unlawfully continued the detention even after he gave them a reasonable explanation of the matter the shopkeepers had found "odd," namely, how he had come to be in possession of the jewelry he was trying to sell. But while defendant was advising Officer Morrow that the jewelry had belonged to his mother who had just passed away and that he intended to pawn it, Hickman was telling Officer Kearsing that the men had coins that may match the description of stolen coins described in a list recently disseminated to the pawn shop. The officers promptly conversed. Contrary to defendant's argument, the conflicting statements from defendant and Hickman justified a continued detention to enable the officers to resolve the ambiguity and to find out whether the activity was lawful or unlawful. (*People v. Souza* (1994) 9 Cal.4th 224, 242; *In re Tony C., supra*, 21 Cal.3d at p. 894.) The fact defendant proffered an innocent explanation did not mean that the officers' investigation must cease. Defendant's claim that the innocent explanation "tipped the scales" away from continued detention has no merit.

Once the officers ran record checks on the men and learned that Chapman was on active parole, the officers were entitled to conduct a parole search of the car in which Chapman was seated. This required that both men be removed from the car. Officer Kearsing's decision to handcuff defendant was supported by defendant's reported

8

propensity for violence. Defendant's claim that he was unlawfully handcuffed and moved to the patrol car has no merit.

### 5. *Removal of the Baggie*

Defendant does not dispute that Officer Kearsing properly conducted a *Terry* patsearch of defendant's person based upon his reported violent tendencies and his prior convictions for possession of ammunition. Defendant notes that a *Terry* patsearch is limited to weapons and does not encompass a search for marijuana. (*Terry, supra*, 392 U.S. at p. 29.) But *Terry* was not the justification for Officer Kearsing's removal of the bag.

Rather, removal of the bag was based on defendant's admission that the bag contained marijuana. As in *People v. Avila* (1997) 58 Cal.App.4th 1069 (*Avila*), Officer Kearsing "was performing a justified *Terry* patdown search" when he "felt [an] . . . object" and "asked defendant what the object was, without removing it." (*Id.* at p. 1075.) "Defendant told the officer that it was ['weed']--an illegal [substance]. Neither did the officer remove an unidentified object, nor did defendant equivocate in his answer. Instead, defendant confessed to the crime. [Citation.] The Fourth Amendment was not designed to protect a defendant from his own candor." (*Ibid.*)

Defendant counters that "[p]ossession of marijuana with a valid marijuana card is not a crime." But at the suppression hearing, defendant's counsel proffered only the fact that defendant *had* the card. Counsel did not proffer, and no other evidence suggested, that defendant ever *told the officers* that he had the card. The card's mere existence did not prevent Officer Kearsing from "believ[ing] and conscientiously entertain[ing] an honest and strong suspicion that a crime had been or was being committed." (*Avila, supra,* 58 Cal.App.4th at p. 1075.) Thus, Kearsing had probable cause to believe that defendant had committed the crime of possession of marijuana. (*Ibid.*)

9

DISPOSITION

The judgment is affirmed.


    BLEASE           , Acting P. J.


We concur:


    MURRAY         , J.


    RENNER         , J.